STATE EX REL. BEITZ, Respondent, vs. BADING, Mayor, and others, Appellants.

*January 17—February 24, 1914.*

*Municipal corporations: Taxation: Budget: Taxes to extinguish deficit and for readjustment fund: Statutes: When intended to take effect.*

Ch. 606, Laws of 1913,—providing for the levy, in cities of the first class, of a tax of one-tenth of a mill for the purpose of extinguishing a deficit in the city treasury from nonpayment of taxes in previous years, and of another one-fourth of a mill for a so-called readjustment fund,—did not require such taxes to be included in the general tax levy of 1913, which had, before the passage of said act, been rightfully delimited by the adoption of a budget under then existing laws. The legislative intention was that said ch. 606 should supplement and perfect ch. 312, Laws of 1913, and that the two acts should take effect simultaneously with the creation of the budget and the levy of the taxes of 1914.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

*P. F. Leuch* and *Adolph G. Schwefel,* for the appellants.

For the respondent there was a brief by *Gilbertson, Lehr, Reitman & Kiefer,* attorneys, and *J. Elmer Lehr* and *Lehr, Kiefer & Reitman,* of counsel, and oral argument by *J. Elmer Lehr.*

WINSLOW, C. J.    This is an action of *mandamus,* and the defendants appeal from the judgment awarding a peremptory writ requiring them as city officers of the city of Milwaukee to include in the tax levy for the year 1913 a tax of one tenth of a mill for the purpose of extinguishing a deficit in the city treasury, resulting from uncollected taxes in previous years, and another tax of one quarter of a mill for a so-called readjustment fund.    These taxes are required to be levied by the provisions of ch. 606 of the Laws of 1913 (secs. 926—176 to 926—178, Stats. 1913), and the only question in the case is whether this last named law requires them to be included in the tax levy of 1913 or that they shall be first levied in the tax levy of 1914.

It is true that the act referred to is mandatory in its terms and contains a provision that it shall take effect upon its passage and publication, but notwithstanding these considerations we have reached the conclusion, for reasons which we will briefly state, that it was not intended to affect in any way the tax levy of 1913.

Since the year 1907 the legislative intent to place the financial system of cities of the first class purely upon the budget basis is very apparent.    By ch. 494 of the session laws of that year six sections were added to the general charter law, and numbered sections $925q$—160 to $925q$—165.    By the first of these new sections it was made the duty of the head of each department of the city government, on or before November 1st in each year, to file with the comptroller a report and estimate in writing in detail of the needs of his department for the ensuing fiscal year (*i. e.* the year commencing January 1st following).    By sec. $925q$—161 a board of es-

timate was created and required to convene November 1st each year, and to consider the estimates of the departments filed with the comptroller. This board was then required to make and submit to the council in writing on or before January 1st "a proposed budget of *taxes to be levied,*" expenditures to be made, and bonds to be issued during the coming fiscal year. By sec. 925q—162 the common council was required, on or before February 1st, to estimate and determine by resolution the sums of money required to meet the expenses and disbursements of the city during the current year, specifying the amount of each fund, and to include in such resolution a sufficient sum *to be levied for taxes in such year* as it shall determine to be necessary for municipal purposes, including a sum for a tax adjustment fund to be used in canceling on the treasurer's books outlawed, unpaid personal property taxes. The section also contains further provisions as to certain other special funds which may be levied, and provides for the determination at that time of the amount of bonds which shall be issued during the year, and prohibits the creation of debts or liabilities by the departments in excess of the amounts determined by the council and placed in the budget. In the official publication of the Laws of 1907 this section is headed in blackletter type, "General appropriation bill—a finality for the year." Sec. 925q—163 gives the council power to levy annually sufficient sums for the various specified city funds, not exceeding certain named percentages, and not exceeding in the aggregate fourteen mills on the dollar on the total valuation of the city property. Sec. 925q—164 required city officers to account for and pay into the city treasury monthly all fees or commissions received by them in their official capacity. Sec. 925q—165 provided that other cities might adopt the first two sections of the act in the same manner in which the general law is adopted.

By chs. 92 and 100 of the Laws of 1911, secs. 925q—162 and 925q—163 were amended. The amendment to the first

named section was trivial and the amendment to the last named section, while quite extensive, affected details which are unimportant so far as this case is concerned, and for these reasons it becomes unnecessary to notice them further.

It seems very certain from mere inspection of this legislation that the intent was to inaugurate a system by which, after due consideration, not only the various city. funds and expenditures were to be fixed, but the amount of the tax levy for the coming year was to be finally determined as early as the 1st day of February, i. e. about nine months in advance of the actual levy of the tax in the following October. The wisdom of a scheme by which the amount of taxation is to be determined so long before the tax is to be levied is not a matter with which we have anything to do.

This law was in full force during December, 1912, and January, 1913, and governed the making of the estimates and budget upon which the tax levy of October, 1913, was to be based. No sum was inserted in that budget for a "tax adjustment fund," nor was any tax for that purpose included in the resolution fixing the tax levy. As this fund was, under the law then existing, a fund the levying of which was discretionary with the council, it follows that it was lawful to omit the same from that budget, and also that, such omission having been lawfully made, no levy could be made for that fund in October following, unless the same were required by the legislation of 1913.

Does ch. 606 of the Laws of 1913, which went into effect June 30th of that year, apply to the general tax levy of 1913 ?

To answer this question understandingly it is necessary to consider, in connection with the act in question, ch. 312 of the laws of the same year, which quite materially changes the provisions of the budget law. It was introduced in the assembly March 4, 1913, and passed by that body April 18th following, after a favorable report by the committee on municipalities. It reached the senate April 22d and was re-

ferred to the committee on corporations and passed the senate May 12th.

Chapter 606 was introduced in the assembly April 25th, was referred to the same committee as the prior bill, passed by the assembly May 29th, sent to the senate and referred to the same committee in that body as the first bill, and concurred in by the senate on June 10th. Thus it is seen that ch. 606 was introduced in the assembly while ch. 312 was still pending in the senate, that both bills went through the hands of the same committees, and that apparently they were not considered as in any way inharmonious. Ch. 312 materially changes many features of the budget law, while ch. 606 provides for the levying of certain taxes in cities of the first class. Both, therefore, seriously affect the financial system of the city of Milwaukee and must, on familiar principles, be considered as *in pari materia.*

It will be helpful to consider the purpose and effect of ch. 312 in our study of the meaning of ch. 606.

The general purpose of ch. 312 was unquestionably to further perfect the budget system and correct faults which experience had shown to exist. Evidently it had been concluded that there ought to be a larger board of estimate, a greater opportunity for the public to be heard as to the contents of the budget, and some provision for increasing any particular fund in case of emergency during the year, and allowing greater expenditure in that case than the expenditure provided for by the original budget.

To accomplish these ends the time of the filing of the estimates made by heads of departments was advanced by ch. 606 to the 1st of October, the board of estimate was increased in number by adding the finance committee of the council, the meetings of the board were thrown open to the public, and a public hearing required not only before the board but afterwards before the council, the budget was required to include a contingent fund for any emergency arising during

24]         JANUARY TERM, 1914.         145

State ex rel. Beitz v. Bading, 156 Wis. 140.

the year calling for the expenditure of money not expressly provided for in the budget, and sec. 925$q$—162 was entirely rewritten, the most marked change being the insertion of provisions giving the board of estimate power during the year to increase the budget estimate for any department and giving the council power to appropriate from the contingent fund the necessary sums to meet such increase.

These are the more important additions to the budget scheme included in the law of 1913, but there was also a significant omission, namely, the omission of any provision for the fund called the adjustment fund for the purpose of meeting the amount of the unpaid and outlawed personal property taxes each year.

Now it is very certain that this law was not intended to affect in any way the budget which had been made up in January, 1913, nor the tax levy based thereon to be made in October, 1913. Both that budget and that tax had been definitely determined and were not to be disturbed. · It is just as certain also that there was no intention by this law to materially change or weaken the principle of the former budget law, namely, that the expenditures of the municipality are to be definitely determined in advance, and the tax levy thereafter made is to be limited to the raising of the funds so determined, except in case of some fund which is required to be raised by some other mandatory legal provision. Turning now to ch. 606 and remembering that it was introduced while ch. 312 was still pending in the senate, we are unable to discover from it any intent to affect the taxation of 1913. Nothing in its language indicates an intention to interfere with anything which had been theretofore settled or disturb the harmonious working of the budget system. It must be presumed that the legislature knew that the amount of the expenditures and prospective tax levies for 1913 had already been fixed and determined, and that any act which proposed to add to or subtract from the tax levy for the current year

would interfere with the purpose of the budget law and materially change a tax levy which had previously been rightfully delimited.

If it were proposed to make changes of this nature it would seem that the law would so provide in no uncertain terms. But the law in question does not do this.

The first section of the act provides that whenever in a city of the first class there shall exist a deficit by reason of nonpayment of taxes, the common council shall annually, until the deficit is extinguished, levy a tax of one tenth of a mill for the purpose of extinguishing such deficit. The second section provides that in all cities of the first class the common council shall annually levy a tax sufficient to cover the taxes entered on the tax roll for the year which it is estimated will remain unpaid. The third section provides that in all such cities where expenditures are made or indebtedness incurred in advance of the collection of taxes, the council shall annually (until such time as all taxes can be levied in advance) levy a tax of one fourth of a mill, the proceeds of which shall be used as a taxation readjustment fund to be used to defray the charges allowed in the *budget* of that year for some other fund in lieu of levying a tax for such other fund, and that the council shall levy a tax to defray the estimated charges for the succeeding fiscal year against such other fund, and thereafter the taxes for such other fund shall be levied in advance of the expenditures therefor.

It is very plain that the three sections of this act constitute parts of one harmonious plan; namely, a plan to put the finances of the city gradually upon a cash basis. The idea is that each fund shall, at the beginning of the fiscal year, be possessed of the actual cash required for the estimated expenditures of the year, and that there shall be an annual fund for the profit and loss account. There is no indication of any idea that part of this scheme should go into effect at one time and part at another. It rather appears to us that the

intention was that it should supplement and perfect ch. 312, and that the two acts should take effect simultaneously with the creation of the budget and the levy of the taxes of 1914.

We discover nothing in the act which forbids this construction of the legislative intention, and as this construction tends to promote the orderly conduct of municipal affairs and makes no sudden and unexpected change in matters already determined in accordance with previously existing provisions of law, we deem it the better construction.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment overruling the demurrer to the return and quashing the alternative writ.